UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOCELYN CHROBAK, ) | VERIFIED COMPLAINT |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | 06 CV 1916 |
| ) | |
| v. ) | |
| ) | |
| HILTON HOTELS CORPORATION, ) | JURY TRIAL DEMANDED |
| COSTA CARIBE CORAL BY HILTON, and ) | |
| MR. NEGRO JIMENEZ, ) | |
| ) | |
| Defendants. ) | |

_____

**NATURE OF COMPLAINT**

Plaintiff, Jocelyn Chrobak, by and through her counsel, file this Complaint against the Defendants, Hilton Hotels Corporation, Costa Caribe Coral by Hilton and Mr. Negro Jimenez.  This lawsuit raises the issue of liability by a corporation for a tort committed at a property that it owns in whole or in part, by one of its employees during the course of employment while performing duties within the scope of the employee's employment.  This lawsuit seeks declaratory and monetary damages against Defendant Hilton Hotels Corporation, and co-Defendants Costa Caribe Coral by Hilton and Mr. Negro Jimenez for an alleged rape incident that took place on or

1

about March 10, 2005 at the Costa Caribe Coral by Hilton Resort in the Dominican Republic. The sexual assault was perpetrated by co-Defendant security guard Negro Jimenez, an employee at the Costa Caribe Coral by Hilton resort.  The Costa Caribe Coral by Hilton resort is owned by the Hilton Hotels Corporation in whole or in part, and as such Hilton Hotels Corporation should be held equally liable for the tort committed by one of its employees.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1332.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  Defendant Hilton Hotel Corporation is a corporation resident of New York State for purposes of venue because it is subject to personal jurisdiction in the State of New York by virtue of its business contacts and ownership of properties in the State of New York, specifically in the Southern District of New York.

## PARTIES

2.    Plaintiff, Jocelyn Chrobak, is and has been, at all times relevant to the matters complained of herein, a resident in the

city of Bentleyville, County of Washington, State of Pennsylvania.

3. Defendant, Hilton Hotel Corporation, is a lodging hospitality company owning, managing and franchising hotels world wide with corporate office located at 9336 Civic Center Drive, Beverly Hills, California 90210.

4. Co-Defendant Costa Caribe Coral by Hilton is part of Hilton Caribbean Group, which in turn is part of Hilton International. Hilton International is owned by Hilton Hotels Corporation through an acquisition that took place on February 23, 2006 where Hilton Hotels Corporation completed its acquisition of the lodging assets of Hilton Group plc (known collectively as "Hilton International"). Defendant Hilton Hotel Corporation has a direct ownership interest in the co-defendant property Costa Caribe Coral by Hilton locate in the Dominican Republic. Defendant Hilton Hotels Corporation advertises in its website the resort Costa Caribe Coral by Hilton and has direct web-links forwarding users to [www.coralbyhilton.com.](www.coralbyhilton.com.)

5. Co-Defendant Mr. Negro Jimenez, was at the time of the incident alleged herein, an employee of the Costa Caribe Coral by Hilton resort, working as a security guard. Upon information and

belief, no disciplinary actions were taken against Mr. Jimenez; instead, Mr. Jimenez actually continued working as a security guard in the resort immediately after the incident.

## FACTUAL BACKGROUND

6. On or about March 9th, 2005, Jocelyn Chrobak, was visiting the Dominican Republic with other students and faculty from her school, Bethany College. The group was staying at the Costa Caribe Coral by Hilton.

7. On or about the evening of March 9th, 2005, Jocelyn was with a friend, from school, Hillary Norman. Jocelyn and Hillary went to a bar at the resort to watch an entertainment show and have a few drinks. Later that night, at approximately 11:00 p.m. Jocelyn and Hillary went to a disco located in the resort. At that time, Jocelyn had a purse which she did not want to leave unattended. After a few hours, Jocelyn decided to keep her purse at a safe place. On or about 1:00 a.m. (March 10, 2005) that night, Jocelyn went to the bartender to ask if he could keep the purse behind the counter for her. The bartender refused. Jocelyn then went to the sports bar nearby to ask the bartender there to keep her

purse for her.  He also refused.  Jocelyn then decided to walk back to her room to leave the purse there.

8.   Jocelyn walked back to her room at the resort and encountered two security guards standing at the lobby entrance.  Jocelyn asked one of the security guards, who later was identified as Mr. Negro Jimenez, if he could hold her purse and the security guard agreed.  Mr. Jimenez placed the purse in a nearby room.  He then grabbed Jocelyn by the arm and led her through the lobby and through the sports bar.

9.   Jocelyn did not know where Mr. Jimenez was taking her but she was not worried because he was a security guard and there were a lot of people around.  Mr. Jimenez continued to lead Jocelyn through the sports bar and through the disco, until finally they reached the back of the disco near the bar and into a dark room.

10.  After they were inside, Mr. Jimenez, without any consent or encouragement from Jocelyn, used both hands to put Jocelyn up against the wall and began kissing her. Jocelyn immediately pushed him away and started to yell

"no" and "stop" at Mr. Jimenez.  Jocelyn attempted to walk towards the door but Mr. Jimenez ran over to the door, closed it and locked it.  He then came back to Jocelyn, pushed her up against the wall and began kissing her again.  Jocelyn started to yell at him again while he took his finger and held it up to his mouth making a motion for her to be quite.  Jocelyn was aware that they were right next to the disco and that probably no one would be able to hear her screams.

11.   Mr. Jimenez, without Jocelyn's consent and against her protests, pulled up her skirt and pulled her underwear down.  Jocelyn tried to pull up her skirt and rush towards the door.  As she was struggling to get away, Jocelyn lost her footing and stumbled to the ground.  The next thing she knew, Jocelyn was laying on the ground and Mr. Jimenez on top of her.  Jocelyn then felt a hard, painful penetration and went into shock.  Mr. Jimenez penetrated a few more times.  After Mr. Jimenez finished, he showed Jocelyn what appeared to be a used condom and threw it behind him.

12.   Subsequent medical examinations showed that Jocelyn

had suffered lacerations of the labia menorah and the labia majora due to the forceful penetration (Exhibit A – Medical Records). The perpetrator then pulled up his pants and left the room. Jocelyn crawled through the floor looking for her clothes. After Jocelyn put herself back together she left the room, went through the disco, the sports bar and then to the lobby.

13. Jocelyn found her friend Hillary who was looking for Jocelyn. Jocelyn told Hillary what had happened and then pointed out Mr. Jimenez to her. Apparently, Mr. Jimenez had gone back to his post and was standing there again carrying on with his security guard duties. Jocelyn and her friend went to the restroom where they discussed the incident and decided to notify their college professor, Dr. Joseph Lovano.

14. On the way to Dr. Lovano's room, they had to pass through the security guard, Mr. Negro Jimenez. Hillary approached Mr. Jimenez and asked whether he had had sex with Jocelyn to which he replied in the affirmative. Dr. Lovano was notified of the incident and Jocelyn, Hillary and Dr. Lovano went to the front desk to speak to a

manager.

15. Dr. Lovano demanded to speak to a manager but the receptionist notified him that there was nobody there for him to talk to.  Dr. Lovano notified the receptionist about the incident and the receptionist insisted that there was nothing they could do at the moment.  There were no efforts by the receptionist or any other staff to notify the police or file a report of the allegation. The security guard, Mr. Jimenez then walked over near the front desk counter and listened to the conversation.  Dr. Lovano again demanded to speak to a manager and was told that the matter would be addressed in the morning. Angry, Jocelyn, Hillary and Dr. Lovano went back to their rooms while Mr. Jimenez was allowed to roam freely and continue with at his post as a security guard.

16. Jocelyn did not sleep that night.  The following morning, while Jocelyn, Hillary and Dr. Lovano were eating breakfast, they were approached by Francisco Jorge, the general manager of the hotel.  Mr. Jorge notified them that the police was there and wanted to talk to them.  Dr. Lovano demanded to talk to the police

only after the U.S. Embassy was contacted. Mr. Jorge talked to Dr. Lovano while the security guard, Mr. Jimenez was standing nearby listening to the conversation.

17. It was inconceivable that the perpetrator was allowed by the resort to roam around freely and stand near Jocelyn after the resort was notified of the incident. Jocelyn and Dr. Lovano went to their room and called the U.S. Embassy. They spoke to Christopher Lamora, the Head of the American Citizen Services in the Embassy. Mr. Lamora notified Jocelyn that there had been a number of incidents of Hotel employees raping American women at the hotels. The Embassy sent over two Consular Officials, Rosanna Gonzalez and Vanessa Paulus to assist Jocelyn. A meeting was arranged with General Manager Francisco Jorge and the head of the security, among others. Jocelyn explained the incident of the sexual attack. General Manager Francisco Jorge implied that there had been no rape.

18. After the meeting, at approximately 2:00 p.m. Jocelyn walked over to the police station with the

consulates to file a formal report. Jocelyn then sought a doctor in order to have a medical examination. After an examination, the doctor reported lacerations on the upper and lower labia menorah and majora and a hyperomica (swollen and bleeding) vagina. General Manager Francisco Jorge was notified of the results and then he offered to either send the perpetrator home for the next few days until Jocelyn's school group left or move the whole group to another resort. There was no offer or discussion concerning disciplinary or investigatory actions against the perpetrator.

19. The group was moved to another resort and Jocelyn went back to the US the following day. Jocelyn eventually went back to the Dominican Republic to press charges against the perpetrator. A criminal action is still pending in criminal court in the Dominican Republic. There is presently an outstanding warrant for Mr. Jimenez.

## CLAIMS FOR RELIEF

20. Costa Caribe Coral by Hilton was negligent in hiring

co-Defendant Negro Jimemez. Further it was negligent for it failed to supervise and train its employee Negro Jimenez to prevent such attacks upon the guests of the resort. Such attacks are fairly common in the Dominican Republic and as such are foreseeable acts that the resort must take into account during training and supervision of its staff. This is especially true given the nature of the perpetrator's official duties as a security guard. The perpetrator was in a position that denoted trust and respect. He was in a position of authority representing the resort in his official capacity. In addition, co-Defendant Costa Caribe Coral by Hilton was further negligent in the handling of the incident once it was made known to the resort. The Plaintiff first informed the receptionist who did not take any actions. After a period of time, the General Manager, Francisco Jorge, was also informed and he did not suspend, fire or take any other disciplinary or preventive action against the perpetrator. General Manager, Francisco Jorge merely suggested to let the perpetrator go home for a few days until Jocelyn's group was gone or move the Jocelyn's group to another resort. This was not an appropriate measure to take considering the nature of the crime.

Costa Caribe Coral by Hilton, as the employer of security guard Negro Jimenez, is responsible for any intentional tort committed by Mr. Jimenez while Mr. Jimenez was acting within the scope of his employment when the tort was committed.  In this instance, the tort was committed while co-Defendant Negro Jimenez was performing his duties as a security guard.  The victim, Jocelyn, allowed herself to be led by the security guard, Negro Jimenez, trusting that he was in charge of her security as a guest of the resort. The co-Defendant abused his position. She trusted his position of authority as a representative of the resort in his official capacity as a security guard.

21.  Defendant Hilton Hotels Corporation should be held liable under the theory of <u>respondeat superior.</u>  A corporate defendant, such as Hilton Hotels Corporation, may be vicariously liable for any of the allegedly improper conduct of the co-Defendant Costa Caribe Coral by Hilton and co-Defendant security guard Negro Jimenez because one of its employees committed an intentional tort while performing duties within the scope of employment.

WHEREFORE, the Plaintiff prays that this Honorable Court grant the following relief:

(a) Declare the Defendant, Hilton Hotels Corporation, and co-Defendants Costa Caribe Coral by Hilton and Mr. Negro Jimenez, jointly liable for the tort committed by Mr. Jimenez;

(b) Awarding the Plaintiff compensatory damages;

(c) Awarding the Plaintiff punitive damages;

(d) Awarding the Plaintiff attorney's fees as well as costs and disbursements incurred in this action; and

(e) Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

22.  Plaintiff demands trial by jury of any and all issues properly triable by jury in this action.

Dated: March 9, 2006

        Respectfully submitted,

        _____

        Manchanda Law Offices

        Attorney(s) for the Plaintiff

        14 Wall Street, 20th floor

        New York, New York 10005

        Tel: (212) 618-1830

        Fax: (212) 618-1831